HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLYN WELBORN; TORI FOLEY; and
GABRIEL MEEKINS,

    Plaintiffs,

    v.

SNOHOMISH COUNTY; and JASON
TONER and MELISSA TONER, a married
couple,

    Defendants.

Case No. 2:19-cv-00355-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendants Snohomish County's and Jason Toner's Motion for Summary Judgment ("Motion"). Dkt. # 37. For the reasons below, the Court **GRANTS** in part Defendants' Motion.

## II. BACKGROUND

On February 8, 2018, Carolyn Welborn, Tori Foley, and Gabriel Meekins (collectively, "Plaintiffs") were driving through a neighborhood, looking for homeowners' association policy violations. Dkt. # 45 at 2; Dkt. # 38-3 at 8-9; Dkt. # 44 at 1. The neighborhood, the Copper Station housing community, is overseen by a Homeowners Association Board ("HOA") that works with a company entitled Condominium Management to manage the community. Dkt. # 45 at 1-2; Dkt. # 44 at 1. At the time, Ms. Welborn was a property manager for Condominium Management, and

ORDER – 1

Ms. Foley and Mr. Meekins were residents of Copper Station and board members of the HOA.  Dkt. # 45 at 1; Dkt. # 38-3 at 7; Dkt. # 44 at 1.

During their drive, Plaintiffs passed Jason Toner's house.  Dkt. # 45 at 1; Dkt. # 38-3 at 9-10; Dkt. # 44 at 2.  Mr. Toner is employed as a Snohomish County sheriff's deputy but was off-duty that day.  Dkt. # 48-1 at 6-7.  He saw Plaintiffs' car pass and, because it was driving slowly, he thought it was suspicious as he recalled there being many package thefts in the area.  Dkt. # 46 at 96, 100.  Driving his personal vehicle, he decided to follow the car.  *Id.* at 97.

Shortly after passing Mr. Toner's house, Plaintiffs pulled over next to a curb to inspect a vehicle with an expired license plate.  Dkt. # 38-2 at 6; Dkt. # 38-3 at 10; Dkt. # 38-4 at 12.  As Plaintiffs were about to turn back onto the street, Mr. Toner drove his car, at an angle, in front of theirs and stopped, effectively blocking their movement.  Dkt. # 38-2 at 7; Dkt. # 38-3 at 10; Dkt. # 38-4 at 13.  At that moment, Plaintiffs did not know who the driver was or what he was doing.  Dkt. # 38-2 at 7; Dkt. # 38-3 at 10; Dkt. # 38-4 at 13.  They also did not see any law enforcement insignia on Mr. Toner's vehicle.  Dkt. # 38-2 at 14; Dkt. # 38-3 at 18; Dkt. # 38-4 at 21-22.

Then, Mr. Toner exited his car and rushed to Plaintiffs' driver-side window.  Dkt. # 38-2 at 7; Dkt. # 38-3 at 10; Dkt. # 38-4 at 13.  When he reached the window, Plaintiffs still could not identify him, only observing his frame and noting that he was wearing a sweatshirt.  Dkt. # 38-2 at 12; Dkt. # 38-4 at 20.  Mr. Toner yelled at Plaintiffs, asking who they were and what they were doing in the neighborhood.  Dkt. # 38-3 at 10-11; Dkt. # 38-4 at 13.  Startled, Plaintiffs told him that they were from the HOA and management.  Dkt. # 38-2 at 7; Dkt. # 38-3 at 10; Dkt. # 38-4 at 13.  Mr. Toner looked in the backseat, recognized Mr. Meekins, and realized that they were in fact part of the HOA.  Dkt. # 38-4 at 13; Dkt. # 38-5 at 6.  Once he noticed Mr. Meekins, Mr. Toner returned to his car and drove off.  Dkt. # 38-3 at 11; Dkt. # 38-4 at 13.  And although Mr. Meekins did not initially know that it was Mr. Toner, he realized that it was indeed him when he saw Mr.

ORDER – 2

Toner's face.  Dkt. # 38-4 at 12, 16.  The incident lasted about one minute.  Dkt. # 38-2 at 10; Dkt. # 38-3 at 18-19; Dkt. # 38-4 at 21.

At the time, Mr. Toner was not in uniform, did not identify as a sheriff's deputy, did not display his badge, did not issue commands, or otherwise signal that he was a law enforcement officer.  Dkt. # 38-2 at 13-14; Dkt. # 38-3 at 18-19; Dkt. # 38-4 at 20-22.  Plaintiffs noticed that Mr. Toner was carrying a firearm (Dkt. # 44-2 at 2; Dkt. # 45 at 3), but it was his personal firearm, not issued to him by the sheriff's office (Dkt. # 46 at 97).

Soon after, each Plaintiff filed a complaint with the Snohomish County Sheriff's Department.  Dkt. # 45 at 4; Dkt. # 38-3 at 17; Dkt. # 44 at 3. After investigating Mr. Toner's conduct, the Snohomish County Sheriff's Office found no violation of policy.  Dkt. # 46 at 9-12.  The sheriff's office then sent a letter to Ms. Foley, informing her that the complaint was not sustained and that no disciplinary action would be taken against Mr. Toner.  Dkt. # 38-3 at 21.

Plaintiffs filed a complaint in King County Superior Court against Snohomish County and Mr. Toner in his representative capacity as a sheriff's deputy.  Dkt. # 1-1.  The complaint also names as defendants Mr. Toner in his individual capacity and his wife, Melissa Toner.  *Id.*  Defendants later removed the case to this Court.  Dkt. # 1.  Since then, Snohomish County and Mr. Toner have filed for a motion for judgment on the pleadings on all causes of action (Dkt. # 25) and a motion for summary judgment on all causes of action (Dkt. # 37).  The Court now reviews Snohomish County and Mr. Toner's motion for summary judgment. Dkt. # 37.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

ORDER – 3

reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV.  DISCUSSION

### A.  Section 1983 Claims

Plaintiffs assert § 1983 claims against Mr. Toner and Snohomish County, who have both moved for summary judgment. The Court will address each Defendant in turn.

#### i.  Jason Toner

To establish a claim under 42 U.S.C. § 1983, plaintiffs must show that they were

ORDER – 4

deprived of a federally protected right and that the deprivation was "committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The purpose of § 1983 is to deter state actors from "using the badge of their authority" to deprive others of their federally guaranteed rights. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000). There is "no rigid formula" to determine liability, only the "sifting [of] facts and weighing [of] circumstances." *Id.*

That said, this circuit has developed a three-part test to determine whether an off-duty police officer was acting under color of state law. *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020). "The officer must have: (1) acted or pretended to act in the performance of his official duties; (2) invoked his status as a law enforcement officer with the purpose and effect of influencing the behavior of others; and (3) engaged in conduct that 'related in some meaningful way either to the officer's governmental status or to the performance of his duties.'" *Id.* (quoting *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006)).

This analysis often turns on whether an officer "exhibited sufficient indicia of state authority" to conclude that the officer was acting in an official capacity. *Id.* at 1141. Such indicia have often included whether the officer was dressed in uniform or in plain clothes or whether the officer identified as an officer, displayed a badge, or pretended to exercise official responsibilities in any way. *Id.* at 1140-41; *see, e.g.*, *Anderson*, 451 F.3d at 1069 (holding that an off-duty custody officer was acting under color of law when he told bystanders he "was a cop" and to "stay back"); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1996) (holding that an off-duty police officer was not acting under color of law given that he was in blue jeans, displayed no badge, and did not purport to act as a policeman).

Plaintiffs here do not make it past part one of the test. They have offered almost no evidence showing that Mr. Toner pretended to be a police officer when he stopped

ORDER – 5

them. The material facts are not in dispute: When Mr. Toner confronted Plaintiffs on February 8, 2018, he was off duty. Dkt. # 48-1 at 6-7. He stopped them using his personal vehicle, which did not display any law enforcement insignias. Dkt. # 38-2 at 14; Dkt. # 38-3 at 18; Dkt. # 38-4 at 21-22. At the time, he was not in uniform but in a sweatshirt. Dkt. # 38-2 at 12; Dkt. # 38-4 at 20. He did not display a badge or identify as law enforcement. Dkt. # 38-2 at 13-14; Dkt. # 38-3 at 18-19; Dkt. # 38-4 at 20-22. And it is undisputed that the firearm he was carrying was his own, not issued by the sheriff's office. Dkt. # 46 at 97. Further, he did not issue any commands, only asking Plaintiffs who they were and what they were doing in the neighborhood. Dkt. # 38-2 at 13-14; Dkt. # 38-3 at 18-19; Dkt. # 38-4 at 20-22. Once he realized that Plaintiffs were from the homeowners' association, he left. Dkt. # 38-3 at 11; Dkt. # 38-4 at 13. These facts show that at no time during the incident did Mr. Toner purport to be law enforcement. Thus, Mr. Toner did not act or pretend to act in the performance of his official duties. *Hyun*, 952 F.3d at 1140.

Plaintiffs suggest, however, that Mr. Toner "projected his authority as a law enforcement officer" by using an "angled high risk stop maneuver as taught to law enforcement personnel," which Ms. Foley, as a police officer herself, recognized as a law enforcement tactic. Dkt. # 27 at 4; Dkt. # 1-1 at 3. But drawing on one's experience as a state actor is not enough to convert private action into state action. *Naffe*, 789 F.3d at 1038 (declining to find state action even though prosecutor drew from his deputy district attorney experience to denigrate plaintiff).

Apart from police tactics, Plaintiffs also argue that Mr. Toner, as a commissioned deputy, possessed the authority to investigate criminal activity. Dkt. # 43 at 6-7. They say he was doing just that when he confronted them. *Id.* It is undisputed that Mr. Toner chose to follow Plaintiffs because he thought that they may have been package thieves as they were in a suspicious, slow moving car. Dkt. # 48-1 at 11-12. Plaintiffs also cite evidence showing that the investigation of package theft is in fact a law enforcement-

ORDER – 6

related activity, which on-duty deputies may indeed investigate. Dkt. # 46 at 109. With that, Plaintiffs argue that prong one is met because Mr. Toner was actually performing his official duties.

Without more, however, the Court cannot find state action. Mr. Toner's decision to confront Plaintiffs—because he suspected that they may have been package thieves and because investigation of package theft is generally a law enforcement activity—is simply not enough to conclude that Mr. Toner was acting in his official capacity during the incident. This is especially true given the circumstances described above. That day, Mr. Toner was off-duty, driving his personal car, and wearing a sweatshirt. Dkt. # 48-1 at 6-7; Dkt. # 46 at 97; Dkt. # 38-4 at 20. He did not flash his badge, issue any commands, or identify as a police officer. Dkt. # 38-2 at 13-14; Dkt. # 38-3 at 18-19; Dkt. # 38-4 at 20-22. He was carrying his personal firearm. Dkt. # 46 at 97. And the entire encounter lasted about one minute. Dkt. # 38-4 at 21. What is more, Mr. Toner testified that he confronted Plaintiffs without any intention of gathering evidence or collecting statements. Dkt. # 46 at 102. And he testified that this was his first time stopping a vehicle in Copper Station neighborhood on a suspicion of package theft. *Id.* at 100.

Weighing all the circumstances, the Court finds that Plaintiffs have failed to show that Mr. Toner acted or purported to act in the performance of his official duties.

To be sure, even if there were enough evidence to find that Mr. Toner was acting or purporting to act in his official capacity, Plaintiffs would not satisfy the second prong. Part two of the analysis requires plaintiffs to show that an officer "*invoked his status as a law enforcement officer* with the purpose and *effect* of influencing the behavior of others." *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020) (emphasis added). That is, an officer must have used his *status* to influence others. *Id.*

For example, in *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 833-34 (9th Cir. 1996), an officer investigated a plaintiff's residence for narcotics. Later, off-duty, the

ORDER – 7

officer returned to rob the plaintiff. *Id.* The officer entered the residence by ringing the doorbell and forcibly entering. *Id.* at 839. The court found that the officer did not act under color of law because he "did not use his authority to gain entry to the home." *Id.* at 839-40. The officer's law enforcement status did not induce the plaintiff to open the door—the plaintiff would have opened the door regardless of whether the officer was in fact an officer. *Id.* Instead, the officer used "brute physical violence" to enter the home. *Id.* And, even though the plaintiff may have recognized the officer when he opened the door, the mere "recogni[tion that] an individual [is] employed as a police officer does not alone transform private acts into acts under color of state law." *Id.*

The undisputed evidence here reveals that Mr. Toner did not use his "status as a law enforcement officer" to block Plaintiffs' movement—he used his personal vehicle. When Mr. Toner committed the alleged constitutional deprivation (by blocking Ms. Welborn's car with his), Plaintiffs did not know that it was Mr. Toner blocking them. Ms. Welborn said that she "slamm[ed] on the brake" because a car "whizzed by and came to a screech halt in front of [her]" and that she had "no idea" who it was or what was going on. Dkt. # 38-2 at 7. Ms. Foley similarly testified that she did not recognize the man standing near Ms. Welborn's window. Dkt. # 38-3 at 18. And Mr. Meekins did not know that it was Mr. Toner until he saw his face—after Ms. Welborn's car had already been blocked. Dkt. # 38-4 at 12, 16.

Like the plaintiff in *Van Ort* who opened the doorbell without knowing that it was a police officer coming to rob him, Plaintiffs here stopped the car not knowing that it was Mr. Toner blocking them. *See Van Ort*, 92 F.3d at 839-40. Ms. Welborn did not know who it was when she slammed the brake, and she did not see any law enforcement insignia on the car that whizzed by. Dkt. # 38-2 at 7, 14. She stopped not because she thought the car was driven by a law enforcement officer, but because a car came to a "screech halt" in front of her. *Id.* And Mr. Meekins's mere recognition of Mr. Toner and recollection that he is a sheriff's deputy are not enough to "transform private acts into

ORDER – 8

acts under color of state law." *Van Ort*, 92 F.3d at 839-40.

In sum, Mr. Toner did not use his authority to induce Plaintiffs to stop. *Id.* Because Mr. Toner did not invoke his law enforcement status to influence others, the second prong of the analysis is also not met. *Hyun*, 952 F.3d at 1140. Because the Court has found that Plaintiffs have failed to satisfy the first two prongs, the Court will not analyze the third.

The Court finds that Mr. Toner did not act under color of law and is not subject to § 1983 liability. Therefore, the Court **GRANTS** Defendants' Motion on this claim as to Mr. Toner.

### ii. Snohomish County

A municipality can be sued as a "person" under § 1983. *Monell v. Department of Social Service of New York*, 436 U.S. 658, 694 (1978). For municipal liability, plaintiffs must satisfy four conditions: "(1) that [the plaintiffs] possessed [] constitutional right[s] of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (internal quotation marks omitted). A municipality cannot, however, be held liable under § 1983 solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

Plaintiffs seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused their injury. *Id.* at 690-91. The policy or custom must amount to "deliberate indifference to the constitutional rights of its inhabitants." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). Plaintiffs may show custom by proving the "existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute custom or usage with the force of law." *Id.* at 1075 n.10. To prove custom,

ORDER – 9

they must cite more than a single incident. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.").

Plaintiffs have not shown any custom here. Taking all the evidence put forth and drawing all reasonable inferences in Plaintiffs' favor, the Court finds nothing more than a single incident. At best, Plaintiffs have shown that Lieutenant Rogers and Captain Jeske's investigation of Mr. Toner was grossly deficient. According to Plaintiffs, there were a host of policies that Lieutenant Rogers and Captain Jeske should have charged Mr. Toner with but did not. *See* Dkt. # 43 at 10-14. But this is not enough to, as Plaintiffs suggest, "demonstrate[] a well-established practice in Snohomish County to support law enforcement officials and only provide a cursory review to citizens." *Id.* at 13. At most this would be a single incident of unconstitutional action, lacking any sufficient duration, frequency, or consistency to deem this a custom. *Davis*, 869 F.2d at 1233; *Trevino*, 99 F.3d at 918.

Thus, the Court finds that Plaintiffs have not identified any municipal custom or policy that caused their injury and that Snohomish County may not be held liable under § 1983. Therefore, the Court **GRANTS** Defendants' Motion on this claim as to Snohomish County.

### B. Section 1985(3) Claim

In response to Defendants' Motion, Plaintiffs withdraw their claim under § 1985(3). Dkt. 43 at 17 ("The Plaintiffs concede they cannot establish as a matter of law the constitutional classification required to pursue a cause of action under § 1985 and will

ORDER – 10

stipulate to the dismissal of this cause of action."). Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** this claim without prejudice.

### C. Supplemental Jurisdiction

Now that the Court has entered summary judgment on Plaintiffs' § 1983 claims as to Mr. Toner and Snohomish County and has dismissed Plaintiffs' § 1985(3) claim, it appears that the Court is left with only state law claims.[1]

Against Mr. Toner and Snohomish County, Plaintiffs assert claims for negligent infliction of emotional distress, "personal injury," and negligent supervision. Dkt. # 37 at 18-24; Dkt. # 1-1 at 11-13. Mr. Toner and Snohomish County move for summary judgment on each. Dkt. # 37 at 18-24. In addition, Plaintiffs sued Mr. Toner and Ms. Toner in their individual capacities for negligent infliction of emotional distress, and Ms. Foley and Mr. Meekins also sued the Toners for defamation and false light. Dkt. 1-1 at 11-12. The Toners similarly moved for summary judgment on each. Dkt. # 50.

This action was removed to this Court because it presented a federal question. Dkt. # 1. That question has now been resolved, and only pendent state law claims remain. The Court has supplemental jurisdiction over these claims because they are part of the same case or controversy as the federal claims conferring original jurisdiction. 28 U.S.C. § 1367(a). But the Court may decline supplemental jurisdiction when, as here, it has dismissed all such federal claims. *Id.* § 1367(c). In deciding whether to exercise or decline supplemental jurisdiction, the Court considers "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). When all federal-law claims are eliminated before trial, these factors "will

---

[1] The Court notes that, in their complaint, Plaintiffs also claimed that Melissa Toner violated Plaintiffs' rights under § 1983. Dkt. # 1-1 at 10 ("This Cause of Action is brought by all Plaintiffs against *all Defendants* for deprivation of their constitutional rights within the meaning of 42 U.S.C.A. § 1983.") (emphasis added). Apart from that one line, Plaintiffs have pleaded no facts showing why Ms. Toner would be so liable. Further, her involvement in the February 8, 2018 incident has not been subject to any deposition testimony, and Plaintiffs have not represented any pertinent facts to the Court.

ORDER – 11

point toward declining to exercise jurisdiction over the remaining state law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

Based on these factors, the Court will not exercise supplemental jurisdiction. To date, the Court has not made a significant "investment of judicial energy." *Rosado v. Wyman*, 397 U.S. 397, 403 (1970). It has not heard oral argument or prepared for trial, and this Order will be the first dispositive one entered so far. So judicial economy weighs against exercising supplemental jurisdiction. The same is true for fairness and comity. Because the remaining claims here rely on application of Washington law, those interests will be furthered if this case is remanded to state court. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

In the interest of justice, rather than dismissing the remaining state law claims, the Court remands this matter to the state court from which it was removed.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** in part Defendants' Motion for Summary Judgment. Dkt. # 37. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. The Court **DIRECTS** the clerk of Court to **REMAND** this case to the Superior Court for the State of Washington, for King County.

DATED this 17th day of April, 2020.

*Richard A. Jones*
—————————————
The Honorable Richard A. Jones
United States District Judge

ORDER – 12